# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

––––––––––––––––––

Nº 17-CV-0474 (JFB)

––––––––––––––––––

ROBERT K. MOORE,

Petitioner,

VERSUS

THE ATTORNEY GENERAL OF THE
STATE OF NEW YORK

Respondent.

––––––––––––––––––

**MEMORANDUM AND ORDER**
August 7, 2019

––––––––––––––––––

JOSEPH F. BIANCO, Circuit Judge (sitting by designation):

Robert K. Moore ("petitioner"), proceeding *pro se*, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction in New York state court.  (*See* Pet., ECF No. 1.)  On October 23, 2014, following a jury trial in the Supreme Court of New York, Suffolk County, petitioner was convicted of attempted murder in the second degree, in violation of New York Penal Law § 125.25(1), as amended by §110.00, and assault in the first degree, in violation of New York Penal Law § 120.10(1). On January 7, 2015, petitioner was sentenced to concurrent determinate terms of eighteen years' imprisonment followed by five years of post-release supervision.

In the instant habeas action, petitioner challenges his conviction, claiming that his constitutional rights were violated on the following grounds:  (1) petitioner was denied a fair trial when the trial court improperly indicated during voir dire that defense counsel may, as a matter of strategy, advise petitioner not to testify; (2) trial counsel was ineffective for failing to resubmit a motion requesting reinspection of the grand jury minutes; (3) remarks by the prosecutor during his opening and closing statements constituted prosecutorial misconduct; (4) the trial court improperly permitted the prosecutor to ask questions about the petitioner's pre-arrest and post-arrest silence;  (5) the trial court improperly rejected petitioner's pre-trial suppression request; (6) the prosecution did not establish his guilt beyond a reasonable doubt and the verdict was against the weight of the evidence; (7) the sentence imposed

violated his constitutional rights; and (8) the integrity of the grand jury proceeding was impaired by errors. (*See* Pet. at 5-19.) For the reasons discussed below, petitioner's request for a writ of habeas corpus is denied.

## I. Background

### A. Facts

The following facts are adduced from the instant petition, respondent's answer, and the underlying record.

On January 19, 2014, at approximately 4:40 a.m., petitioner, petitioner's wife, complainant Solomon Maithya ("Maithya"), and other individuals were at the BP gas station at 1501 Straight Path, Wyandach, New York.[1]  (Tr. at 235-41.)[2]  Petitioner was retrieving something from the trunk of his car when Maithya approached him from behind, pulled out a 2 ½ to 3-foot pipe from his pants, and struck petitioner in the back of the head with the pipe. (Tr. at 182-84, 287-89; Ex. 14.[3]) Maithya swung the pipe at petitioner again, but missed.  (Tr. at 289-90.)  Petitioner then approached his wife, spoke to her briefly, and she drove away from the gas station.  (Tr. at 241, 255-56.)  Petitioner then turned his attention back to Maithya, either punching Maithya or striking him in the face with the pipe, knocking him out. (Tr. at 239-40, 312, 596-97, 607-14.)  While Maithya was then lying motionless on the side of the curb, petitioner punched him, stomped on his head at least twice, and repeatedly pounded the pipe into Maithya's chest. (Tr. at 163-64, 242-50, 314-15.)  Petitioner then dropped the pipe, which another man, Darnell Morgan

("Morgan"), threw to the side.  (Tr. at 313, 597.)  An unidentified man picked up the pipe with a towel and carried it away from the scene.  (Tr. at 382, 717-18; Ex. 14.)  Petitioner then kicked Maithya in the ribs and side of the head several times, while Maithya was still unconscious on the ground.  (Tr. at 243.) Petitioner also lifted up Maithya's upper body and dropped him back to the ground multiple times while he was still unconscious. (Tr. at 317-18.)

Three witnesses called 911 between 4:55 and 4:57 a.m. to report this physical altercation, some believing that Maithya had been killed during the incident. (Tr. at 244-45, 442-43, 598-99.)[4]  Police Officers Robert Piccarillo and Christopher Dietrich responded to the scene after receiving a call through dispatch for a fight, which incorrectly reported that the suspect had left the scene. (Tr. at 95-100, 152-53.)  When the officers arrived at the gas station at approximately 5:01 a.m., they saw petitioner attempting to lift the still unresponsive Maithya from the ground and telling him to get up. (Tr. at 62, 155, 173-74.) The officers observed a laceration on petitioner's left cheek, but he did not tell them what had happened. (Tr. at 156.)  The officers did not see any blood on petitioner's clothing or boots, nor did they find any weapons at the scene. (Tr. at 175-77, 181-82.)  No individuals at the scene responded to the officers' requests for information. (Tr. at 100-01, 179.)  The officers learned that the gas station had video surveillance. (Tr. at 161-62, 331.)  However, the video was unclear on the gas station monitor and it was not until after downloading the video and viewing it at the police station

---

[1]  During trial, it was explained that, in the neighborhood, petitioner was commonly referred to as "Israel" and Maithya was commonly referred to as "Africa." (Tr. at 217-18.)

[2]  "Tr." refers to the trial transcript.  (ECF Nos. 12-10 – 12-12.)

[3]  Ex. 14 refers to People's Exhibit 14, which contains segments from the gas station surveillance video.

Because the men moved behind a gas pump out of view of the camera and the recording system skipped multiple times due to its age and low quality, the video does not capture the complete encounter between petitioner and Maithya.  (Tr. at 216-20.)

[4]  The three 911 calls were made by Morgan, Curtis Singleton ("Singleton"), and gas station employee Sean Ali ("Ali"), all of which were played for the jury and all three callers testified at trial.

that the officers were able to see more clearly what had occurred.  (Tr. at 113, 125-26, 131-42, 163, 344.)

While still at the scene, Sergeant Semetsis spoke with petitioner and asked about the cut on his cheek, but petitioner responded that nothing happened and that he was "okay." (Tr. at 336-37.)   In addition, Sergeant Semetsis observed petitioner to be in an altered mental state.    (Tr. at 336-38.)  The police kept petitioner at the scene for approximately an hour to an hour and one-half, though they were unsure whether he was a witness, victim, or suspect.  (Tr. at 180, 205-07, 338-39.)  By the time Sergeant Semetsis arrived at the scene, Maithya was already in an ambulance.  (Tr. At 332.)    Sergeant Semetsis was initially informed that Maithya had not suffered a serious physical injury, and eventually he told petitioner he could leave.  (Tr. 332-39).

Maithya was transported by ambulance to Good Samaritan Hospital, and was later transferred to Stony Brook University Hospital due to the severity and complexity of his injuries.  (Tr. at 554-56.)  As a result of this incident, Maithya suffered several skull and facial fractures, as well as bleeding between the brain and skull and in the brain itself.  (Tr. at 545-49.)  He was severely neurologically impaired and was intubated to assist his breathing.  (Tr. at 545-46.)  Maithya remained at Stony Brook University Hospital for four months.  (Tr. at 512.)

Once Sergeant Semetsis was notified of the seriousness of Maithya's injuries, the investigation was assigned to Detective Steven Paglino.   (Tr. at 221-22, 340-41, 347-48.) Detective Paglino viewed the surveillance video and spoke to witnesses who identified

petitioner as the person who had beaten Maithya.  (H. at 65-73, 91-98.)[5]

Ultimately, Police Officer Carmine Pellegrino and Sergeant Nicolosi arrested petitioner five days after the incident, on January 24, 2014.  (Tr. at 392-94.)  Petitioner was cooperative and made no statements to law enforcement on the ride to the precinct. (Tr. at 417-20.)   After arriving at the precinct around 6:50 p.m., Sergeant Nicolosi observed an injury to the rear of petitioner's head and when asked about the injury, petitioner responded that he had been in a fight a couple of days before.[6]  (Tr. at 396-97.)  Petitioner was then taken to an interview room. Detectives Paglino and James Hughes entered the room around 8:07 p.m., and before they said anything to petitioner, petitioner said, "you guys must be assigned to homicide now." (Tr. at 692-93.)   Detective Paglino noticed injuries on petitioner's face and asked him what happened to his face; petitioner replied that he slipped and fell on ice while shoveling snow.  (Tr. at 693.)  The detectives then left the room.  (H. at 78-79.)  Detective Paglino reentered the room around 9:10 p.m. and read petitioner his *Miranda* rights, including information about waiving those rights.  (H. at 78-82.)    Detective Paglino testified that petitioner repeatedly interrupted his reading of the *Miranda* rights, saying "I don't do that, put that away."  (H. at 79-82.)  After Detective Paglino finished advising petitioner of his rights, petitioner refused to sign the card or speak to the detective.  (H. at 82.)

On September 17, 2014, a suppression hearing began in Suffolk County Supreme Court during which members of law enforcement testified regarding statements made by petitioner and the identification of petitioner.  In a written decision dated October 1, 2014, the court found that petitioner's

---

[5] "H." refers to the transcript of the pre-trial suppression hearing. (ECF Nos. 12-7 to 12-9.)

[6] Office Pellegrino testified that Sergeant Nicolosi asked about the injury while filling out a Prisoner

Activity Log, which included routine booking questions, to make sure that prisoners were not injured while in police custody.  (Tr. at 395.)

statements were voluntary. (*See* Hearing Court Decision, ECF No. 12-1, at 64-66.) Specifically, the court found that petitioner's statement "you guys must be assigned to homicide now" was "unsolicited and voluntary," and that his statement about the source of his injuries was "not in response to an accusatory question, but was an inquiry meant to catalog the physical well being of the defendant." (*Id.* at 66.) Finally, the court held that petitioner's statements at the crime scene in the presence of the police were "non-custodial and voluntarily offered," as they were made in the context of "non accusatory questioning by the police." (*Id.*)

Petitioner was tried in Suffolk County Supreme Court starting on October 7, 2014. During the trial, the prosecution presented testimony from Maithya, multiple eyewitnesses at the gas station, members of law enforcement, and expert witnesses involved in the investigation. During Maithya's testimony, he repeatedly stated that he was unable to remember significant portions of the incident. (Tr. at 491-514.) Ultimately, at the close of the trial, the jury found petitioner guilty of attempted murder in the second degree, in violation of New York Penal Law § 125.25(1), as amended by §110.00, and assault in the first degree, in violation of New York Penal Law §120.10(1). (Tr. at 924.) On January 7, 2015, petitioner was sentenced to concurrent determinate terms of eighteen years of imprisonment followed by five years of post-release supervision. (S. at 20-21.)[7] The court emphasized that it "did not fully appreciate" the extent of Maithya's injuries prior to trial, when it had offered a three-year sentence, and said that "what's fair after trial is not the same thing that was fair before trial." (S. at 19-20.)

### B. Procedural History

#### 1. State Procedural History

On December 4, 2015, petitioner appealed his conviction to the Second Department of the New York State Appellate Division, in which he argued that: (1) the trial court committed reversible error when it indicated during voir dire that defense counsel may, as a matter of strategy, advise petitioner not to testify; (2) it constituted prosecutorial misconduct when the prosecutor stated that petitioner's pre-arrest silence was indicative of "consciousness of guilt" and argued that petitioner's convictions were necessary because "there comes a point in time when society demands humanity"; (3) the trial court committed reversible error when it allowed the prosecutor, during his redirect examination of a police officer, to ask questions about the petitioner's post-arrest silence; (4) the trial court committed reversible error when it failed to suppress post-arrest, pre-*Miranda* statements made by petitioner to law enforcement; (5) the prosecution failed to prove petitioner guilty beyond a reasonable doubt and his convictions were against the weight of the evidence; and (6) petitioner's sentence was harsh and excessive. (*See* App. Div. Br. at 24-58, ECF No. 12-1.)[8] Petitioner then filed a supplemental *pro se* brief on February 16, 2016, adding that: (1) it constituted prosecutorial misconduct for the prosecutor to allow petitioner to stand trial on Detective Paglino's perjured/hearsay grand jury testimony; (2) trial counsel was ineffective for failing to resubmit a motion requesting reinspection of the grand jury minutes; and (3) the trial court committed reversible error when it denied petitioner's motion to dismiss the indictment for the prosecutor's failure to charge the grand jury with the justification defense. (*See* Suppl. App. Div. Br. at 9-12, ECF No. 12-2.)

---

[7] "S." refers to the transcript of petitioner's sentencing. (ECF No. 12-14.)

[8] The Court uses the pagination assigned by the electronic case filing system when citing to the Appellate Division brief and the supplemental Appellate Division brief.

4

On September 14, 2016, the appeal was denied in its entirety, on both procedural and substantive grounds. *See generally People v. Moore*, 37 N.Y.S.3d 158 (2d Dep't 2016). In affirming petitioner's conviction, the Second Department rejected his argument relating to the pre-trial suppression hearing, holding that the statements were either "spontaneous or voluntary . . . or not the product of custodial interrogation." *Id.* at 159. In rejecting petitioner's argument relating to the sufficiency of the evidence, the Second Department held that his challenge was unpreserved for appellate review because "he failed to move for a trial order of dismissal specifically directed at the errors he now claims." *Id.* Additionally, in "viewing the evidence in the light most favorable to the prosecution," there was legally sufficient evidence to disprove the petitioner's justification defense beyond a reasonable doubt. *Id.* Furthermore, when conducting its independent review of the weight of the evidence, the court "accord[ed] great deference to the jury's opportunity to view the witnesses, hear testimony, and observe demeanor." *Id.* In reviewing the underlying record, the court concluded that "the jury's rejection of the defendant's justification defense and its verdict of guilt were not against the weight of the evidence." *Id.*

The Second Department also rejected petitioner's argument that improper statements by the prosecutor deprived petitioner of his right to a fair trial. *Id.* The court found that, "[t]o the extent that some of the prosecutor's remarks were improper, those remarks did not deprive the defendant of a fair trial, and any other error in this regard was harmless, as there was overwhelming evidence of the defendant's guilt, and no significant probability that any error contributed to the defendant's conviction." *Id.*

Finally, the Second Department found that the sentence imposed was not excessive, and that petitioner's other contentions were "either without merit or do not warrant reversal." *Id.* at 159-60.

Petitioner sought leave to appeal to the New York State Court of Appeals, which was denied on November 21, 2016. *See People v. Moore*, 28 N.Y.3d 1074 (2016).

2. The Instant Petition

On January 24, 2017, petitioner moved before this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, on the grounds that: (1) he was denied a fair trial when the trial court improperly indicated during voir dire that defense counsel may, as a matter of strategy, advise petitioner not to testify; (2) defense counsel was ineffective for failing to resubmit a motion requesting reinspection of the grand jury minutes; (3) the prosecutor committed prosecutorial misconduct when he made improper remarks at trial; (4) the prosecutor elicited improper testimony regarding petitioner's silence regarding self-defense; (5) the trial court improperly rejected petitioner's pre-trial suppression request; (6) the prosecution did not establish his guilt beyond a reasonable doubt and the verdict was against the weight of the evidence; (7) the sentence imposed was harsh and excessive; and (8) the integrity of the grand jury proceeding was impaired by particular mistakes. (*See* Pet. at 5-19.) On April 13, 2017, respondent filed a reply in opposition to the petition. (*See* Resp't's Br., ECF No. 12.)[9] Thereafter, on May 12, 2017, petitioner submitted a reply in further support of his petition. (*See* Pet'r's Reply Br., ECF No. 17.)

The Court has fully considered the parties' submissions, as well as the underlying record.

---

[9] The Court uses the pagination assigned by the electronic case filing system when citing to the respondent's brief and its accompany exhibits.

## II. Standard of Review

To determine whether a petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254. "'Clearly established Federal law' means 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* at 413.

AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

## III. Discussion

### A. Procedural Requirements

#### 1. Exhaustion

As a threshold matter, a district court shall not review a habeas petition unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Although a state prisoner need not petition for certiorari to the United States Supreme Court to exhaust his claims, *see Lawrence v. Florida*, 549 U.S. 327, 333 (2007), petitioner must fairly present his federal constitutional claims to the highest state court with jurisdiction over them, *see Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 191 n.3 (2d Cir. 1982) (en banc). Exhaustion of state remedies requires that a petitioner

"'fairly presen[t]' federal claims to the state courts in order to give the State the '"opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (alteration in original) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)).

However, "it is not sufficient merely that the federal habeas applicant has been through the state courts." *Picard*, 404 U.S. at 275-76. On the contrary, to provide the State with the necessary "opportunity," the prisoner must fairly present his claims in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Duncan,* 513 U.S. at 365-66. "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'" *Jones v. Keane*, 329 F.3d 290, 294-95 (2d Cir. 2003) (quoting *Dorsey v. Kelly,* 112 F.3d 50, 52 (2d Cir. 1997)). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." *Daye,* 696 F.2d at 191-92 (collecting cases). To that end, "[t]he chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Id.* at 192.

2. Procedural Bar

A petitioner's federal claims may be procedurally barred from habeas review if they were decided at the state level on "independent and adequate" state procedural grounds.

*Coleman v. Thompson*, 501 U.S. 722, 729-33 (1991); *see, e.g.*, *Michigan v. Long*, 463 U.S. 1032, 1041 (1983). The procedural rule at issue is adequate if it is "firmly established and regularly followed by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (internal quotation marks omitted). To be independent, the "state court must actually have relied on the procedural bar as an independent basis for its disposition of the case," by "clearly and expressly stat[ing] that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 261-63 (1989) (internal quotation marks omitted). A state court's reliance on an independent and adequate procedural bar precludes habeas review even if the state court also rejected the claim on the merits in the alternative. *See, e.g.*, *id.* at 264 n.10 (holding that "a state court need not fear reaching the merits of a federal claim in an *alternative* holding," so long as the state court "explicitly invokes a state procedural bar rule as a separate basis for decision"); *Glenn v. Bartlett*, 98 F.3d 721, 725 (2d Cir. 1996) (same).

The procedural bar rule is based on the "comity and respect" that state judgments must be accorded. *House v. Bell*, 547 U.S. 518, 536 (2006). Its purpose is to maintain the delicate balance of federalism by retaining a state's rights to enforce its laws and to maintain its judicial procedures as it sees fit. *Coleman*, 501 U.S. at 730-31. Generally, the Second Circuit has deferred to state findings of procedural default as long as they are supported by a "fair and substantial basis" in state law. *Garcia*, 188 F.3d at 78. However, there is a "small category" of "exceptional cases in which [an] exorbitant application of a generally sound [procedural] rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 534 U.S. 362, 376, 381 (2002). Nevertheless, principles of comity "counsel that a federal court that deems a state procedural rule inadequate should not reach that conclusion lightly or without clear support in state law." *Garcia*,

188 F.3d at 77 (citation and internal quotation marks omitted).

If a claim is procedurally barred, a federal habeas court may not review it on the merits unless the petitioner demonstrates both cause for the default and prejudice resulting therefrom, or if he demonstrates that the failure to consider the claim will result in a miscarriage of justice. *Coleman*, 501 U.S. at 750. A petitioner may demonstrate cause by showing one of the following: "(1) the factual or legal basis for a petitioner's claim was not reasonably available to counsel, (2) some interference by state officials made compliance with the procedural rule impracticable, or (3) the procedural default was the result of ineffective assistance of counsel." *McLeod v. Graham*, No. 10 Civ. 3778(BMC), 2010 WL 5125317, at *3 (E.D.N.Y. Dec. 9, 2010) (citing *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994)). Prejudice can be demonstrated by showing that the "errors 'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003) (internal quotation mark omitted) (quoting *Rodriguez v. Mitchell*, 252 F.3d 191, 203 (2d Cir. 2001)). A miscarriage of justice is demonstrated in extraordinary cases, such as where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). To overcome a procedural default based on a miscarriage of justice, the petitioner must demonstrate that "more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt." *House*, 547 U.S. at 536-38.

"The burden of proving exhaustion lies with the habeas petitioner." *Cartagena v. Corcoran*, No. 04-CV-4329 (JS), 2009 WL 1406914, at *3 (E.D.N.Y. May 19, 2002) (citing *Colon v. Johnson*, 19 F. Supp. 2d 112, 120 (S.D.N.Y. 1998)).

### 3. Application

First, the Court concludes that Ground Six of petitioner's habeas petition, arguing both that there was insufficient evidence to support his conviction and that the prosecution failed to meet their burden of proof (Pet. at 16.), is not properly exhausted. Within this argument, petitioner contends that the trial court provided a "faulty justification charge" to the jury and that witnesses admitted to being "prepped by the prosecution." (Pet. at 15-16.) As the government suggests, these arguments were not presented to the state court as a basis for this claim and are entirely record-based. It is well-settled that "[t]o properly exhaust a claim that relies on errors or omissions that are apparent from the record of trial or pretrial proceedings, petitioner must raise it on direct appeal to the Appellate Division and then seek leave to appeal to the Court of Appeals." *Anthoulis v. New York*, No. 11 Civ. 1908 (BMC), 2012 WL 194978, at *3 (E.D.N.Y. Jan. 23, 2012). Accordingly, the Court finds that this claim has not been adequately exhausted as petitioner did not set forth "the essential factual allegations" on direct appeal and thus deprived the state court of a "fair opportunity to rule on the claim." *See Daye*, 696 F.2d at 191.

Furthermore, petitioner's sufficiency of the evidence claim is procedurally barred because the Second Department decided it on "independent and adequate" procedural grounds. *See Coleman*, 501 U.S. at 729-31. The court rejected petitioner's argument that the evidence at trial was insufficient to support his conviction, ruling that his challenge was unpreserved for appellate review because "he failed to move for a trial order of dismissal specifically directed at the errors he now claims." *Moore*, 37 N.Y.S.3d at 159. Under firmly established New York law, legal insufficiency claims are not preserved unless the motion for dismissal is "'specifically directed' at the alleged error." *People v. Gray*, 86 N.Y.2d 10, 19 (1995) (quoting *People v. Cona*, 49 N.Y.2d 26, 33 (1979)).

Further, a state court's statement that a petitioner's claim was unpreserved for appellate review is sufficient to establish that the court was relying on a procedural bar as an independent ground in disposing of the issue. *See, e.g.*, *Glenn v. Bartlett,* 98 F.3d 721, 724-25 (2d Cir. 1996). This is true even if the state court held, in the alternative, that petitioner's claim failed on the merits. *See Green v. Travis,* 414 F.3d 288, 293 (2d Cir. 2005) ("[E]ven when a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted.").

To overcome a procedural bar to his sufficiency of the evidence claim, petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750. Here, petitioner has not demonstrated any cause for the default or provided any explanation for his failure to properly exhaust all of his claims in state court, nor that a fundamental miscarriage of justice will take place if the Court fails to consider the procedurally defaulted claims. Accordingly, petitioner's sufficiency of the evidence claim is not reviewable by this Court. However, assuming *arguendo* that this claim was properly before this Court, it is without merit, as set forth *infra*.

B. The Merits

The Court proceeds to address the merits of each of petitioner's claims, finding that none provides a basis for habeas relief.

1. Statement During Voir Dire About Strategic Decision Not To Testify

As noted above, petitioner claims that he was denied a fair trial and his due process rights were violated when the trial judge made comments during voir dire about a defendant's strategic choice not to testify at trial. (Pet. at 5.) The comments made by the trial judge at

issue are the following:

> The Court: See, that brings an interesting point. Remember, what you need, if you were to find an individual guilty, is that the People have to prove their case beyond a reasonable doubt. And we won't get into all the elements right now. What [defense counsel] is getting at is that he might - - you have two sides on the trial attorneys here. [Defense counsel], after the People rest, may in his opinion say, you know, I don't think they proved their case beyond a reasonable doubt. So he may advise his client don't testify because they didn't prove their case. That's a tactic, that's trial attorneys doing what they do, what both of these young men are very good at. And he may make that decision on a tactical basis. Can't hold it against him or against the defendant. We're all in agreement, right?
>
> [All prospective jurors responded in the affirmative.]

(Jury Selection Tr. at 185-86, ECF No. 12-13.)

> The Court: Here's the thing. Again, remember, the prosecution has the sole burden of proof. They have to prove the elements of the two crimes or either/or both of them beyond a reasonable doubt. Both of these young men are seasoned trial attorneys, they are very good at what they do. The prosecution - - they may put on their case, the People may rest, and [defense counsel] may advise his client you know what? My opinion, they didn't prove the charges beyond a reasonable doubt. So I'm advising you not to testify. He may do that. As a trial tactic. All right? It is perfectly acceptable.

(*Id.* at 485-86.)

Petitioner raised this claim on direct appeal and it was rejected by the state court. Having reviewed the record, the Court concludes that petitioner has not demonstrated that the state court's rejection of this claim was contrary to or an unreasonable application of clearly established federal law.

There is "no doubt that prejudicial intervention by a trial judge could so fundamentally impair the fairness of a criminal trial as to violate the Due Process Clause." *Daye v. Attorney General of State of N.Y.*, 712 F.2d 1566, 1570 (2d Cir. 1983). "The critical question in determining whether the trial judge was fundamentally unfair is twofold: (1) did the trial judge's interference 'distract the jury from a conscientious discharge of their responsibilities to find the facts, apply the law, and reach a fair verdict,' and (2) 'was the overall conduct of the trial such that public confidence in the impartial administration of justice was seriously at risk.'" *Copeland v. Walker*, 258 F. Supp. 2d 105, 135 (E.D.N.Y. 2003) (quoting *Daye*, 712 F.2d at 1572). It is well settled that a trial court may not tell a jury that a petitioner's decision not to testify is somehow evidence of guilt. *See Griffin v. California*, 380 U.S. 609, 615 (1965). However, in the instant case, this trial judge's comments during jury selection do not rise to the level of impinging on petitioner's constitutional rights. It is clear that the comments were made in the context of confirming that prospective jurors should not draw any adverse inference from the petitioner's potential decision not to testify at trial. Accordingly, the Court, after carefully reviewing the record of the jury selection process, finds that these comments did not render petitioner's trial fundamentally unfair, nor did they violate his due process rights.

### 2. Ineffective Assistance of Trial Counsel

Petitioner claims that he received ineffective assistance of counsel because his trial attorney failed to move to reinspect the grand jury minutes. (Pet. at 6.)

### a. Standard

Under the standard promulgated by *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694.

In order to meet the first prong of the *Strickland* test, "a defendant must show that counsel's representation 'fell below an objective standard of reasonableness' determined according to 'prevailing professional norms' . . . . Counsel's performance is examined from counsel's perspective at the time of and under the circumstances of trial." *Murden v. Artuz*, 497 F.3d 178, 198 (2d Cir. 2007) (quoting *Strickland*, 466 U.S. at 688). AEDPA review of an ineffective assistance of counsel claim is "'doubly deferential' . . . because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)); *Burt v. Titlow*, 571 U.S. 12, 13 (2013) (quoting *Strickland*, 466 U.S. at 690).

In particular, "[a]ctions or omissions by counsel that 'might be considered sound trial strategy' do not constitute ineffective assistance." *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000) (internal quotation marks omitted) (quoting *Strickland*, 466 U.S. at 689); *see also Lynn v. Bliden*, 443 F.3d 238, 247 (2d Cir. 2006) ("As a general rule, a habeas petitioner will be able to demonstrate that trial counsel's decisions were objectively unreasonable only if 'there [was] no . . . tactical justification for the course taken.'" (quoting *United States v. Luciano*, 158 F.3d

655, 660 (2d Cir. 1998))). For that reason, "[s]trategic choices made by counsel after thorough investigation . . . are virtually unchallengeable . . . and there is a strong presumption that counsel's performance falls 'within the wide range of reasonable professional assistance.'" *Gersten v. Senkowski*, 426 F.3d 588, 607 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 689-90).

Finally, in determining whether one or more errors by trial counsel renders the representation constitutionally deficient under the first prong of *Strickland*, the Court "need not decide whether one or another or less than all of these . . . errors would suffice, because *Strickland* directs us to look at the 'totality of the evidence before the judge or jury,' keeping in mind that '[s]ome errors [] have . . . a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture. . . .'" *Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001) (alterations in original) (quoting *Strickland*, 466 U.S. at 695-96).

The second prong of the *Strickland* analysis focuses on prejudice to the petitioner. The petitioner is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" means that the errors were of a magnitude such that they "undermine[] confidence in the [proceeding's] outcome." *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). "[T]he question to be asked in assessing the prejudice from counsel's errors . . . is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Henry v. Poole*, 409 F.3d 48, 63-64 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 695).

### b. Application

Petitioner argues that his trial counsel was constitutionally ineffective for failing to move to reinspect the grand jury minutes in light of the discrepancy between the contents of the surveillance video and Detective Paglino's grand jury testimony. (Pet. at 6.) Specifically, petitioner claims that Detective Paglino's grand jury testimony was perjurious, as he stated that he observed petitioner striking Maithya with a pipe, but the video did not include that portion of the incident. Accordingly, petitioner argues that, if trial counsel had filed a motion to reinspect the grand jury minutes, there was a reasonable probability that the indictment may have been dismissed.

First, as pointed out by the respondent, the video was shown to the members of the grand jury, so they were able to view the contents themselves. In addition, as discussed more *infra*, Detective Paglino was subjected to cross-examination at trial regarding these alleged discrepancies in his grand jury testimony, and therefore the trial jury was made aware of this issue before rendering its verdict. (Tr. at 725-29.) Further, defense counsel could have reasonably concluded that submitting a motion to reinspect the grand jury minutes would not have resulted in the dismissal of the indictment, particularly since the trial judge had already reviewed the minutes that included both Detective Paglino's testimony and the video surveillance.

The totality of the record shows that trial counsel provided petitioner with effective assistance. In particular, defense counsel vigorously cross-examined Detective Paglino about the conflicts between his grand jury testimony and the contents of the video at the pre-trial *Huntley* hearing and again at trial to attack his credibility. (H. at 94-96; Tr. at 725-30.) Therefore, the Court finds that defense counsel's decision not to file a motion to reinspect the grand jury minutes was not ineffective under the first prong of *Strickland*.

Even assuming *arguendo* that trial counsel's failure to move to reinspect the grand jury minutes was an error that satisfied the first prong of *Strickland*, petitioner cannot establish that he suffered prejudice as a result of that failure. There is no basis to conclude that a motion to reinspect would have been granted or that, if granted, it would have led to dismissal of the indictment. Moreover, it is well settled that a guilty verdict of a trial jury cures a defect in the grand jury proceeding. *See, e.g.*, *Dixon v. McGinnis*, 492 F. Supp. 2d 343, 348 (S.D.N.Y. 2007) (denying ineffective assistance of counsel claim despite counsel's failure to timely submit a motion to dismiss indictment, which was "negligent at best," because trial jury's guilty verdict cured any defect and therefore petitioner could not establish prejudice). Accordingly, the Court concludes that petitioner's ineffective assistance of counsel claim is without merit.

### 3. Prosecutorial Misconduct

Petitioner claims that certain remarks made by the prosecutor during his opening statement and summation constituted prosecutorial misconduct. (Pet. at 8.) Having reviewed this claim, the Court finds it meritless.

#### a. Standard

"A criminal conviction 'is not to be lightly overturned on the basis of a prosecutor's comments standing alone' in an otherwise fair proceeding." *Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991) (quoting *United States v. Young*, 470 U.S. 1, 11 (1985)). For prosecutorial misconduct to amount to constitutional error, "it is not enough that the prosecutor's remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation marks omitted) (quoting *Darden v. Wainwright*, 699 F.2d 1031, 1036 (11th Cir. 1983)). Instead, the prosecutor's comments "must represent 'egregious misconduct.'" *Celleri v. Marshall*, No. 07-

CV-4114 (JFB), 2009 WL 1269754, at *17 (E.D.N.Y. May 6, 2009) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974)); *accord United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999) ("Remarks of the prosecutor in summation do not amount to a denial of due process unless they constitute 'egregious misconduct.'").

Accordingly, to warrant relief, the Court must conclude that the comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (internal quotation marks omitted) (quoting *Donnelly*, 416 U.S. at 643). However, "not every trial error or infirmity which might call for the application of supervisory powers correspondingly constitutes a 'failure to observe that fundamental fairness essential to the very concept of justice.'" *Donnelly*, 416 U.S. at 642 (quoting *Lisenba v. California*, 314 U.S. 219, 236 (1941)). Rather, a petitioner must show that he "suffered actual prejudice because the prosecutor's comments . . . had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley v. Scully*, 41 F.3d 818, 824 (2nd Cir. 1994). Factors considered in determining such prejudice include "(1) the severity of the prosecutor's conduct; (2) what steps, if any, the trial court may have taken to remedy any prejudice; and (3) whether the conviction was certain absent the prejudicial conduct." *Id.* In "analyzing the severity of alleged misconduct, the court examines the prosecutor's statements in the context of the entire trial." *Miller v. Barkley*, No. 03 Civ. 8580 (DLC), 2006 WL 298214, at *2 (S.D.N.Y. Feb. 8, 2006) (citing *United States v. Thomas*, 377 F.3d 232, 245 (2d Cir. 2004)).

The Second Circuit recognized one of those "rare cases" where prosecutorial error was so egregious to provide relief in *Floyd*, and in doing so "emphasize[d] that [its] holding . . . [was] based on the cumulative effect of the three alleged categories of improper remarks," and that the "case [did] not

involve one, or a few isolated, brief episodes; rather, it involve[d] repeated and escalating prosecutorial misconduct from initial to closing summation." *Floyd v. Meachum*, 907 F.2d 347, 353 (2d Cir. 1990). In that case, "the evidence against [the petitioner] was not heavy," *id.* at 356, and the prosecutor: (1) made "references to the Fifth Amendment [that] could well have been interpreted by the jury as a comment on Floyd's failure to testify," *id.* at 353; (2) "repeated remarks that the Fifth Amendment was 'a protection for the innocent' and not 'a shield' for 'the guilty' [that] incorrectly stated the law by diluting the State's burden of proof beyond a reasonable doubt and undermining the presumption of innocence," *id.* at 354; (3) "impermissibly asked the jury to pass on her personal integrity and professional ethics before deliberating on the evidence, thereby implying that she personally vouched for [a key witness's] credibility," *id.*; and, (4) "characterized [the defendant], who did not testify, as a liar literally dozens of times throughout her opening and closing summations," *id.*, and, "[e]ven more troubling, many of the prosecutor's remarks erroneously equated Floyd's alleged lies with proof of guilt beyond a reasonable doubt," *id.* at 355. The Second Circuit held that "under the totality of the circumstances presented . . . the cumulative effect of the prosecutor's persistent and clearly improper remarks amounted to such egregious misconduct as to render Floyd's trial fundamentally unfair." *Id.* at 353.

### b. Application

Petitioner argues that his constitutional rights were violated because of particular remarks by the prosecutor during his opening and closing statement that petitioner asserts rendered his trial fundamentally unfair. First, the prosecutor, during the opening statement,

told the jury he would ask them at the end of the trial to "send a clear message" and convict petitioner, "because there comes a point in time where society demands humanity." (Tr. at 21.) He repeated this assertion in the summation, stating "there comes a point in time where society demands humanity." (Tr. at 791.) In addition, petitioner challenges the prosecutor's comments regarding his pre-arrest silence. Specifically, during the opening statement the prosecutor stated that petitioner "didn't say he acted in self-defense" (Tr. at 19), and during the summation noted that "he never talked about self-defense"[10] (Tr. at 810). Petitioner challenged these comments on direct appeal, and the Second Department rejected the claim, stating that "[t]o the extent that some of the prosecutor's remarks were improper, those remarks did not deprive the defendant of a fair trial, and any other error in this regard was harmless, as there was overwhelming evidence of the defendant's guilt, and no significant probability that any error contributed to the defendant's conviction." *Moore*, 37 N.Y.S.3d at 159. For the reasons set forth below, the Court finds that the state court's determination was neither contrary to, nor an unreasonable application of, clearly established federal law and rejects this claim on the merits.

First, it cannot be said that any of these statements "infected the trial" in such a manner as to deny petitioner's due process rights. The remarks made by the prosecutor that "society demands humanity," even assuming *arguendo* they were made in error, were not an egregious error. As an initial matter, it is not at all clear that the prosecutor's statement that "society demands humanity" was improper. *See United States v. Pirro*, 9 F. App'x 45, 51 (2d Cir. 2001) (stating that "the prosecutor's argument to the jury that 'justice demands' a conviction was perfectly

---

[10] The portion of petitioner's prosecutorial misconduct claim regarding his pre-arrest silence is addressed in further detail in petitioner's claim regarding improper questioning about petitioner's silence.

legitimate"). Next, as discussed *infra*, the prosecutor's comments regarding petitioner's not stating to the police that his actions were taken in self-defense, were permissible if petitioner made other statements to the police.

Turning to the prosecutor's request for the jury to "send a message" with their conviction, the Court finds this statement improper, but does not find that the comment rose to the level of prosecutorial misconduct entitling petitioner to habeas relief. In particular, petitioner has not shown prejudice given the limited nature of the comment in the context of the entire summation and the overwhelming evidence against petitioner. As noted above, even where a prosecutor has made improper comments, habeas relief is not warranted unless those remarks rendered the trial, as a whole, "fundamentally unfair." *Darden*, 477 U.S. at 181-83. "Where the specific remarks the prosecutor makes neither 'touch upon [n]or bolster the most potent of the government's evidence,' a court will not generally overturn a verdict." *Miller*, 2006 WL 298214, at *3 (alteration in original) (quoting *United States v. Elias*, 285 F.3d 183, 192 (2d Cir. 2002) (further noting that "a court will not ignore otherwise strong evidence of a defendant's guilt on the basis of a single prejudicial remark")).

In the instant matter, the improper statement made by the prosecutor constituted only a small portion of the summation "the bulk of which focused instead on the weight of the evidence against petitioner." *Figueroa v. Heath*, No. 10-CV-0131(JFB), 2011 WL 1838781, at *23 (E.D.N.Y. May 13, 2011); *see also United States v. Rivera*, 22 F.3d 430, 437 (2d Cir. 1994) (stating that "[a] prosecutor's statements during summation, if improper, will result in a denial of due process rights only if, in the context of the entire summation, they cause the defendant substantial prejudice.") Ultimately, the evidence of guilt was overwhelming in this case, making any potential prejudice from the prosecutor's remarks insubstantial. *See Thomas*, 377 F.3d at 245; *see also United States v. Modica*, 663 F.2d 1173, 1181 (2d Cir. 1981) ("[I]f proof of guilt is strong, then the prejudicial effect of the comments tends to be deemed insubstantial."). In sum, having reviewed the record, petitioner's prosecutorial misconduct claim does not provide a basis for habeas relief.

4. Pre- and Post-Arrest Silence Claim

Petitioner argues that the trial court erred by allowing the prosecution to comment on his pre-arrest silence and allowing the questioning of a law enforcement witness regarding his post-arrest silence. (Pet. at 8-9.)

Regarding his pre-arrest silence, petitioner takes issue with the following comments made by the prosecutor during his opening statement and summation:

> The defendant didn't complain of any injuries, he didn't say he acted in self defense.

(Tr. at 19.)

> Consciousness of guilt. At the scene he never talked about self-defense. He never said, I got hit first. What would you do?

(Tr. at 810.)

Petitioner also takes issue with the "trial court allow[ing] the [p]rosecutor to ask questions to [a] police officer concerning [petitioner's] post arrest silence . . . these questions lead [the] jury to believe [petitioner] was not justified." (Pet. at 9.) Petitioner is referring to the following exchange during the re-direct examination of Police Officer Pellegrino, discussing an exchange during petitioner's transport to the precinct:

> Question: Did [petitioner] ever say to you that he acted in self-defense?
>
> Answer: No.
>
> Question: Did at any time he tell you that the injuries were from a pipe?

Answer: No.

Question: At any time did he tell you those injuries were caused by Africa?

Answer: No.

Question: At any point did he say he got into a fight because of what Africa did?

Answer: No.

(Tr. at 429.)  The prosecutor also referenced in his summation petitioner's failure to mention self-defense in his post-arrest statements to the police.  (Tr. at 810-11.)

As a threshold matter, although cognizable under state law, "the Supreme Court has held that the use of a defendant's pre-arrest silence for impeachment purposes does not offend any constitutional guarantees."  *Jones v. Bradt*, No. 6:13-CV-6260(MAT), 2015 WL 506485, at *13 (W.D.N.Y. Feb. 6, 2015) (citing *Jenkins v. Anderson*, 447 U.S. 231, 239 (1980)).  Thus, arguments regarding the prosecutor's comments on pre-arrest silence are not cognizable on a habeas petition.[11]  With respect to the post-arrest situation, "[i]t is well settled that an inference of guilt may not be drawn from a failure to speak or to explain when a person has been arrested."  *United States v. Mullings*, 364 F.2d 173, 175 (2d Cir. 1966) (citations omitted); *accord Doyle v. Ohio*, 426 U.S. 610, 618-19 (1976).  However, "[t]he right to remain silent does not include the right to make false denials."  *Hernandez v. Senkowski*, Nos. CV 98-5270 RR, CV 99-169 RR, 1999 WL 1495443, at *22 (E.D.N.Y. Dec. 29, 1999) (citing *Brogan v. United States*, 522 U.S. 398 (1998)); *see also Anderson v. Charles*, 447 U.S. 404, 408-09 (1980) (*Doyle* does not preclude a prosecutor from commenting on inconsistent statements by a defendant to the police).  Therefore, where, as

here, a defendant chooses to make some statements to the police, a prosecutor can comment on the fact that the defendant lied or did not mention certain key facts that he or she later asserts at trial.

Finally, considering these brief statements in the context of the trial in its entirety, there was an overwhelming amount of evidence of petitioner's guilt, including multiple eyewitness accounts of the incident, video surveillance that captured a portion of the incident, photographs of injuries, and corroborating 911 calls from the scene.  Therefore, the Court concludes that, even if references to petitioner's failure to speak about self-defense in his pre- and/or post-arrest statements amounted to an error by the prosecution, the error is harmless considering the overwhelming evidence of petitioner's guilt.  Accordingly, the Court finds that this claim does not provide a basis for habeas relief.

5.  Failure to Suppress Statements

Petitioner contends that the "[t]rial court committed error when it failed to suppress custodial statements made by [petitioner] finding that [petitioner] was advised of his constitutional rights."  (Pet. at 15.)  The state court denied this claim on the merits, finding that "the County Court properly denied those branches of his omnibus motion which were to suppress certain statements he made to law enforcement officials.  The statements were either spontaneous and voluntary . . . or not the product of custodial interrogation."  *Moore*, 37 N.Y.S.3d at 159.  The Court finds that the state court's determination was neither contrary to, nor an unreasonable application of federal law, nor was it an unreasonable determination of the facts in light of the record.

---

[11]  Even if cognizable under federal law, the claim regarding pre-arrest silence would fail for the same reasons that the post-arrest silence claim fails (as discussed *infra*).

a. Standard

The Fifth Amendment of the United States Constitution provides, in relevant part, that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. Recognizing that a custodial interrogation creates "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely," the Supreme Court held in *Miranda* that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444, 467 (1966). "In particular, prior to the initiation of questioning, [law enforcement] must fully apprise the suspect of the State's intention to use his statements to secure a conviction, and must inform him of his rights to remain silent and to 'have counsel present . . . if [he] so desires.'" *Moran v. Burbine*, 475 U.S. 412, 420 (1986) (alterations in original) (quoting *Miranda*, 384 U.S. at 468-70). "*Miranda*'s warning requirements, however, apply only to 'custodial interrogation.'" *Georgison v. Donelli*, 588 F.3d 145, 155 (2d Cir. 2009) (quoting *United States v. Newton*, 369 F.3d 659, 668 (2d Cir.2004)). "This determination has two parts: (a) there must be an interrogation of the defendant, and (b) it must be while she is in 'custody.'" *United States v. FNU LNU*, 653 F.3d 144, 148 (2d Cir. 2011).

The Supreme Court defined interrogation for purposes of *Miranda* in *Rhode Island v. Innis*, 446 U.S. 291 (1980). In *Innis*, the Supreme Court held that "[t]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 300-01. An "incriminating response" is "any response—whether inculpatory or exculpatory—that the prosecution may seek to introduce at trial." *Id.* at 301 n.5. Accordingly, "[w]here statements are spontaneous—that is, where they are not the result of questioning or its functional equivalent—*Miranda* warnings are not necessary and the statements are not protected." *United States v. Noble*, No. 07 Cr. 284 (RJS), 2008 WL 1990707, at *7 (S.D.N.Y. May 7, 2008); *accord Miranda*, 384 U.S. at 478 ("Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."); *Wolfrath v. LaVallee*, 576 F.2d 965, 973 n.6 (2d Cir. 1978) ("[S]ince the statement which was litigated below was a gratuitously volunteered statement, *Miranda* itself is inapplicable, for spontaneous statements which are not the result of 'official interrogation' have never been subject to its strictures").

The Supreme Court has also recognized an exception to *Miranda* for statements collected through routine booking questions[12] that "appear reasonably related to the police's administrative concerns." *Pennsylvania v. Muniz*, 496 U.S. 582, 601-02 (1990). Routine booking questions include "those designed to elicit an arrestee's pedigree, such as the arrestee's name, aliases, date of birth, address, place of employment, and marital status." *United States v. Chandler*, 164 F. Supp. 3d 368, 387 (E.D.N.Y. 2016). Additionally, questions about an arrestee's medical condition may be "part of [a] booking

---

[12] This exception is known as the "routine booking question exception," "booking exception," or "pedigree exception." *See Rosa v. McCray*, 396 F.3d 210, 214, 221-22 (2d Cir. 2005).

procedure designed to fulfill the government's obligation to provide medical attention if necessary." *United States v. Bishop*, 66 F.3d 569, 572 n.2 (3d Cir. 1995)

However, "recognizing a booking exception to *Miranda* does not mean . . . that any question asked during the booking process falls within that exception. Without obtaining a waiver of the suspect's *Miranda* rights, the police may not ask questions, even during booking, that are designed to elicit incriminatory admissions." *Rosa v. McCray*, 396 F.3d 210, 222 (2d Cir. 2005) (quoting *Muniz*, 496 U.S. at 602 n.14). Routine booking questions may not fall within the pedigree exception if the police should have known that asking the questions was "reasonably likely to elicit an incriminating response." *Id.* (quoting *Innis*, 446 U.S. at 301-02). The determination of whether a booking question falls within the pedigree exception to *Miranda* requires careful consideration of "both the question itself and its relationship to the suspected crime." *United States v. Sezanayev*, No. 17 Cr. 262 (LGS), 2018 WL 2324077, at *12 (S.D.N.Y. May 22, 2018); *see also United States v. Burns*, 684 F.2d 1066, 1068, 1076 (2d Cir. 1982) (assuming without deciding that pedigree exception did not apply to questions about "history of drug use, past record, and personal finances," where defendant was charged with possession of heroin with intent to distribute); *United States v. Valentine*, 657 F. Supp. 2d 388, 394 (W.D.N.Y. 2009) (finding that pedigree exception did not apply to identity questions where officers "had a strong suspicion that [the defendant] was an illegal alien in possession of fraudulent documents concerning his identity").

b. Application

Petitioner claims that the trial court erred in denying the motion to suppress his statement to Detectives Paglino and Hughes that "you guys must be assigned to homicide now." (H. at 77.) The Appellate Division held

that the trial court properly denied the motion, finding that the statement was "either spontaneous and voluntary . . . or not the product of custodial interrogation." *Moore*, 37 N.Y.S.3d at 159 (citations omitted). After an extensive review of the record, the Court concludes that the trial court's determination regarding this particular statement was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented.

Although it is undisputed that defendant was in custody when he made the statement at issue, the Court agrees with the state court that this statement was not the product of interrogation. The evidence presented at the hearing supported a finding that petitioner spoke voluntarily when the detectives entered the interview room, before they asked him anything. Thus, this statement was admissible even though *Miranda* warnings had not yet been provided to petitioner. *See United States v. Colon*, 835 F.2d 27, 30 (2d Cir. 1987) (defendant's statement was spontaneous, and thus *Miranda* warnings were not required, where defendant "was not questioned, confronted with evidence, or even encouraged to be honest and tell the facts"); *Wolfrath*, 576 F.2d at 973 n.6 ("since the statement which was litigated below was a gratuitously volunteered statement, *Miranda* itself is inapplicable, for spontaneous statements which are not the result of 'official interrogation' have never been subject to its strictures").

The other statements at issue are the following: (1) a statement petitioner made, recorded by Sergeant Nicolosi, while Sergeant Nicolosi was filling out a prisoner activity log documenting prisoner's injuries, that petitioner had gotten into a fight a couple of days prior; and (2) the statement by petitioner that visible injuries to his face were due to a fall on ice in response to Detective Paglino asking what happened to petitioner's face. Respondent argues, in part, that the statements

17

were "not self-incriminating" and the questions were part of routine booking and a prisoner's physical injuries at time of booking are a valid administrative concern. (Res'p's Br. at 31.)

As noted above, the determination of whether a booking question falls within the pedigree exception to *Miranda* requires careful consideration of "both the question itself and its relationship to the suspected crime." *Sezanayev*, 2018 WL 2324077, at *12. The state court, after conducting an evidentiary hearing (including evaluating credibility and the totality of the circumstances), found that the standard booking question regarding injury, which took place five days after the incident in question, was not designed to elicit an incriminating response. This Court finds no basis, in light of the record as a whole, to disturb that finding on habeas review.

However, even assuming that petitioner's constitutional rights had been violated by not suppressing these post-arrest statements regarding the source of his injuries, under the *Brecht* standard of review, petitioner's claim warrants no relief. The *Brecht* standard of harmless error review applies regardless of whether petitioner's rights were violated due to *Miranda* violations. The Supreme Court has held "that in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the . . . standard set forth in *Brecht* . . ., whether or not the state appellate court recognized the error and reviewed it for harmlessness [under the *Chapman* standard]." *Fry v. Piller*, 551 U.S. 112, 121-22 (2007). The *Brecht* standard asks "whether the error 'had a substantial and injurious effect or influence in determining the jury's verdict,'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)), and shifts the burden of proof from the state to the petitioner. *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994). Petitioners "are not entitled to habeas

relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Brecht*, 507 U.S. at 637 (citing *United States v. Lane*, 474 U.S. 438, 449 (1986)). Thus, "[h]abeas relief is not appropriate when there is merely a 'reasonable probability' that trial error contributed to the verdict." *Bentley*, 41 F.3d at 824 (citing *Brecht*, 507 U.S. at 637).

Here, the overwhelming evidence of petitioner's guilt renders any improper admission of petitioner's statements harmless error under *Brecht*. Aside from petitioner's statements regarding the cause of his injuries, multiple eyewitnesses testified at trial regarding petitioner continuing to assault the victim, including hitting and striking him with a pipe, when the victim was unconscious on the ground (Tr. at 241-46, 634-36), video surveillance from the gas station corroborating portions of the eyewitness' testimony (Tr. at 163-64), testimony and video corroborating the fact that petitioner could have left the scene safely with his wife (Tr. at 241, 255-56, 261), and multiple 911 calls from eyewitnesses (Tr. at 244-45, 598-99). As a result, the Court is not convinced that petitioner's statements, even if improperly admitted, had any substantial or injurious influence on the jury's verdict. In sum, the Court concludes that this claim does not warrant habeas relief.

6.  Sufficiency of the Evidence Claims

Petitioner argues that he is entitled to habeas relief because there was insufficient evidence to support the jury's verdict. (Pet. at 15-16.)

a.  Standard

The law governing habeas relief from a state conviction based on insufficiency of the evidence is well established. A petitioner "bears a very heavy burden" when challenging evidentiary sufficiency in a writ of habeas corpus. *Einaugler v. Supreme Court of New York*, 109 F.3d 836, 840 (2d Cir. 1997) (quoting *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993)). A criminal conviction in state

court will not be reversed if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Policano v. Herbert*, 507 F.3d 111, 115-16 (2d Cir. 2007) (stating that "[i]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt" (internal quotation mark omitted) (quoting *Jackson*, 443 U.S. at 324)). Even when "faced with a record of historical facts that supports conflicting inferences [a court] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994) (quoting *Jackson*, 443 U.S. at 326).

When considering the sufficiency of the evidence of a state conviction, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999). Accordingly, the Court looks to New York law for the elements of attempted murder in the second degree and assault in the first degree.

In New York, "[a] person is guilty of murder in the second degree when, with intent to cause the death of another, he causes the death of such person." N.Y. Penal Law § 125.25(1), as amended by N.Y. Penal Law § 110.00. "A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to

effect the commission of such crime." N.Y. Penal Law § 110.00. The New York Court of Appeals has consistently held that the intent to kill can be inferred from both a defendant's conduct and surrounding circumstances. *See People v. Bracey*, 41 N.Y.2d 296, 301 (1977); *see also Bossett v. Walker*, 41 F.3d 825, 830 (2d Cir. 1994) ("[A] conviction may be based upon circumstantial evidence and inferences based upon the evidence, and the jury is exclusively responsible for determining a witness' credibility."). Finally, "[a] person is guilty of assault in the first degree when: [w]ith intent to cause serious physical injury to another person, he causes such injury to such person . . . by means of a deadly weapon or a dangerous instrument." N.Y. Penal Law § 120.10(1).

b. Application

Petitioner argues that the evidence was legally insufficient to support his convictions for attempted murder in the second degree and assault in the first degree.[13] Specifically, petitioner claims that, throughout the trial, witnesses were inconsistent and conceded that they were "prepped by the prosecution," and that the trial court gave a "faulty justification charge." (Pet. at 15-16.)

Viewing the facts in the light most favorable to the prosecution, the Court finds that based on the evidence in the underlying record, a rational trier of fact could have certainly rejected petitioner's justification defense and found proof beyond a reasonable doubt of guilt. As discussed above, the jury was presented with eyewitness testimony, video surveillance that corroborated witness testimony, photos of the victim's substantial injuries, and medical evidence establishing the

---

[13] In the alternative, petitioner also asserts that the verdict was against the weight of the evidence. A "weight of the evidence" claim, however, is based on state law, *see Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) ("A 'weight of the evidence' argument is a pure state law claim grounded in New

York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles."), and the Court cannot consider a purely state law claim on federal habeas review, *see Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law. . . ."). Therefore, this claim is not reviewable.

injuries suffered, all of which could rationally support a guilty verdict.

Regarding petitioner's claim that there were inconsistencies among the witnesses' testimony, the Court notes that "[a]ll issues of credibility . . . must be resolved in favor of the jury's verdict." *United States v. Riggi*, 541 F.3d 94, 108 (2d Cir. 2008). In addition, as the Second Circuit has explained, "it is well-settled that when reviewing the sufficiency of the evidence we 'defer to the jury's assessment of witness credibility and the jury's resolution of conflicting testimony.'" *United States v. Glenn*, 312 F.3d 58, 64 (2d Cir. 2002) (quoting *United States v. Bala*, 236 F.3d 87, 93-94 (2d Cir. 2000)). Accordingly, the Court rejects petitioner's suggestion that the jury's determination of guilt is based on insufficient evidence due to inconsistencies between the witnesses' testimony.

The Court likewise rejects petitioner's claim that there was insufficient evidence to establish guilt because the witnesses were all prepared by the prosecution. The Court notes that the respondent opposes this claim, both as procedurally defaulted and on the merits, stating that "the witnesses did not admit to having the prosecutor tailor their testimony." (Resp't's Br. at 34.) The Court finds nothing in the underlying record to support petitioner's contention that the prosecution's witnesses were prepared in a manner that caused petitioner's conviction to be based on insufficient and/or unreliable evidence.

The Court turns to petitioner's argument regarding the allegedly faulty justification charge. Petitioner takes issue with the fact that "during charging the elements of justification [the trial judge] instructed the jury to find [petitioner] guilty by telling the jury to hold #3 in [their] head for a moment where #3 was that [petitioner] was not justified." (Pet. at 16.) Contrary to petitioner's assertion, a review of the transcript reveals that the trial judge did not instruct the jury to find petitioner guilty during his justification instruction. The at-issue statement was made by the trial judge after the jury had requested that he re-read the portions of the jury charge that explained the elements of each charged crime. (Tr. at 872.) The trial judge agreed to re-read those portions of the instructions, and told the jury that he would re-read the justification instruction after re-reading the elements of the charged crimes. (*Id.*) Accordingly, when the trial judge reached the lack of justification as an element of murder in the second degree, he instructed the jury to "hold [that] in [their] head[s] for a moment," because he intended to instruct on justification after completing his other instructions. (*Id.* at 874-75.) The Court finds nothing in the trial court's statement that suggested to the jury that they should reject petitioner's justification defense.

Even assuming there was an error in the jury instruction, jury instructions only violate due process if they "fail[] to give effect to [the] requirement" that the prosecution must prove every element of a charged offense beyond a reasonable doubt. *See Middleton v. McNeil*, 541 U.S. 433, 437 (2004). "[A] state prisoner making a claim of improper jury instructions faces a substantial burden." *DelValle v. Armstrong*, 306 F.3d 1197, 1200 (2d Cir. 2002). The petitioner must establish that "'the ailing instruction by itself so infected the entire trial that the resulting conviction violat[ed] due process,' not merely [that] 'the instruction is undesirable, erroneous, or even universally condemned.'" *Id.* at 1200-01 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154, (1977)); *see also Middleton*, 541 U.S. at 437 (explaining that "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation"). Furthermore, "[a] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Middleton*, 541 U.S. at 437 (internal quotation marks omitted) (quoting *Boyde v. California*, 494 U.S. 370, 378 (1990)).

In this case, the Court finds that the trial court's instructions on justification were not erroneous and certainly not a due process violation.  The state court's ruling was not contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, the Court finds that petitioner's sufficiency of the evidence claim (including the arguments regarding the jury charge) does not warrant habeas relief.

### 7.  Sentencing Claim

Petitioner claims that his eighteen-year sentence violates his constitutional rights because it is "harsh and excessive," that it was augmented because he chose to proceed to trial, and that the judge at sentencing erroneously found that he showed no remorse and failed to take into consideration a petition showing support for petitioner.  (Pet. at 16-17.)

When a petitioner is claiming that his sentence is harsh and excessive, for purposes of habeas review, "[n]o federal constitutional issue is presented [if] . . . the sentence is within the range prescribed by state law."  *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *accord Alfini v. Lord*, 245 F. Supp. 2d 493, 502 (E.D.N.Y. 2003).

Here, petitioner's sentence was within the permissible range prescribed by New York state law, and thus there is no federal question for habeas review.  As discussed above, petitioner was convicted of attempted murder in the second degree and assault in the first degree, both class B felonies.  *See* N.Y. Penal Law § 125.25(1), §110.00; § 120.10(1).  He was sentenced as a prior felony offender, due to a prior conviction of criminal sale of a controlled substance in the third degree.  (S. at 11-12.)  According to New York state law, at the time his sentencing, petitioner was facing a maximum term of twenty-five years of imprisonment.  Thus, petitioner's sentence of eighteen years was within the statutorily prescribed range and raises no constitutional concerns.  *See* N.Y. Penal Law § 70.06(6)(a).

Further, although it is clear that a petitioner may not be punished for going to trial, *see Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978), there is no evidence here that the trial court imposed a harsher sentence because petitioner chose to proceed to trial.  Petitioner argues that the fact that his sentence exceeded the state court's pre-trial plea offer demonstrates that the trial court's sentence was vindictive.  However, "the mere fact that the sentence imposed following trial is greater than the offer made during plea negotiations, does not indicate that a petitioner has been punished for exercising his right to proceed to trial."  *Walker v. Walker*, 259 F. Supp. 2d 221, 226 (E.D.N.Y. 2003) (citing *United States v. Araujo*, 539 F.2d 287, 292 (2d Cir. 1976).  Petitioner also argues that the trial court's statement that "sadly, what is fair after trial, now that I know the extent, now that I know everything that happened, now that I have seen the videotape and that we saw Mr. Maithya's testimony, I'm afraid that what is fair after trial is not the same thing that was fair before trial," (S. 20), evidences vindictive sentencing.  These statements show only that the trial court's sentence properly reflected the evidence presented at trial, and do not suggest that the sentence was punishment for the decision to proceed to trial.

On the issue of remorse, after petitioner stated that he had remorse for his actions, the trial court responded, "Yeah.  Everybody is going to suffer, both [the victim's and petitioner's] families.  I wish that Robert Moore was there that night.  This Robert Moore sounds like he wouldn't have done what you did." (S. at 18.)

In short, a review of the sentencing transcript reveals that the trial court acknowledged that proceeding to trial was petitioner's absolute right, that the court had reviewed all of the documents submitted on petitioner's behalf, and that the sentence was based on a multitude of factors, including the facts presented at trial, and petitioner's prior convictions, without any suggestion that

petitioner had no remorse.   (S. at 18-21.) Accordingly, this claim does not provide a basis for habeas relief in this case.

8.   Grand Jury Claims

Petitioner claims that he is entitled to habeas relief because of errors during the grand jury presentation.   First, as previously analyzed in the Court's discussion of petitioner's prosecutorial misconduct claim, petitioner argues that Detective Paglino's perjured testimony in the grand jury made the indictment fundamentally flawed.[14]   (Pet. at 17.)   Second, petitioner argues that he is entitled to relief due to the prosecution's failure to "charge the grand jury with the justification defense."   (Pet. at 18-19.)

Generally, "claims of deficiencies in a state grand jury proceeding cannot support a collateral attack under 28. U.S.C. § 2254." *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989); *see also Warren v. Ercole*, No. 07 CV 3175 (JG), 2007 WL 4224642, at *10 (E.D.N.Y. Nov. 27, 2007) (stating that "claims based on the sufficiency of the evidence presented to the grand jury are not cognizable under federal law").   Indeed, "[i]f federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal court." *Lopez*, 865 F.2d at 32.   In any event, the Court finds that any errors in Detective Paglino's grand jury testimony had no prejudicial effect, as the grand jury viewed the video themselves. Further, the trial jury was made aware of this

issue in the grand jury during the cross-examination of Detective Paglino:

> Question: So it's your testimony today that the portions of the video you saw, you never saw the pipe in Mr. Moore's hand, is that correct?
>
> Answer: That's correct.
>
> Question:   Now,   you   had   an opportunity to testify before the grand jury, correct?
>
> Answer: Correct.
>
> Question: And when you testified before the grand jury you had an opportunity   to   tell   them   what happened during your investigation.
>
> Answer: Correct.
>
> \*          \*          \*
>
> Question: And on that day you were asked this question. 'Question: on that video can you tell us what you observed?   Answer:   I   observed Solomon,   Africa,   strike   Robert Moore, Israel, on the back of the head with some sort of silver pipe, some object.   At which time after, Israel got his wits about him, he went after him, they got into a fight, he eventually took possession of that pipe, and used it to beat Africa.'
>
> \*          \*          \*
>
> Question: Do you recall saying that?
>
> Answer: I do.

---

[14] This claim is argued more cohesively in petitioner's supplemental brief in conjunction with the state court direct appeal.   In the supplemental brief, petitioner argued that, during the grand jury presentation, Detective Paglino stated that he viewed surveillance video of the incident and saw petitioner strike the victim with a pipe, but then at the suppression hearing Detective Paglino said he did not see petitioner with the pipe in his hands.   (*See* Suppl. App. Div. Br. at 8-10.)

In response, the People argued on appeal that at the suppression hearing, Detective Paglino explained that his grand jury testimony was based on both the video surveillance and what he learned from interviewing eyewitnesses, and that the grand jury viewed the video itself so any testimony describing the video did not prejudice petitioner.   (*See* People's Reply to Suppl. App. Div. Br. at 5-9, ECF No. 12-4.)

\* \* \*

Answer: My testimony in the grand jury was based on what I was able to observe in portions of the video as well as my further investigation with witnesses.

(Tr. at 726-29.)

Therefore, this discrepancy in the grand jury was put before the trial jury, allowing them to consider it in determining whether to find Detective Paglino credible. Accordingly, this testimony does not undermine the petitioner's conviction in any way, and provides no basis for habeas relief.

Finally, petitioner's claim that he is entitled to habeas relief because the grand jury was not read a justification defense charge is meritless. "[A] petit jury's guilty verdict renders harmless any error in the grand jury proceedings." *Price v. Grenier*, No. 98 Civ. 2601 (LTS)(MHD), 2003 WL 22890404, at \*6 (S.D.N.Y. Oct. 16, 2003) (citing *United States v. Mechanik*, 475 U.S. 66, 70-71 (1986)). Therefore, petitioner's conviction by a trial jury, who received a complete instruction on the justification defense, renders the alleged issues in the grand jury presentation harmless.

## IV. CONCLUSION

For the foregoing reasons, this Court finds that petitioner has demonstrated no basis for habeas relief under 28 U.S.C. § 2254. Accordingly, this petition for a writ of habeas corpus is denied in its entirety. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States,* 369 U.S. 438, 444-45 (1962). The Clerk of the Court shall close this case.

SO ORDERED.



JOSEPH F. BIANCO
United States Circuit Judge
(sitting by designation)

Dated: August 7, 2019
Central Islip, New York

\* \* \*

Petitioner proceeds *pro se*. Respondent is represented by Grazia R. DiVencenzo, Assistant District Attorney, Suffolk County District Attorney's Office, 200 Center Drive, Riverhead, New York 11901.

23